STATE OF VERMONT

| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 481-8-16 Wncv |
|---|---|
| Ashley Hill,<br>　　　Petitioner<br><br>　　　v.<br><br>n/a,<br>　　　Respondent | |

Opinion and Judgment on Recount of Election

This matter came before the Court this day for a final hearing regarding the recount for democratic primary for state senate in Washington County. Following a recount, the Washington County Clerk certified that Mr. Brooks had received 3,709 votes and that Ms. Hill had received 3,708 votes. In addition, there were four contested ballots submitted to the Court. The Court held a status conference on August 24, 2016, to establish a process for reviewing, examining, and determining whether to count those four contested ballots.

The final hearing regarding those ballots was held today. Ms. Hill was present and was represented by Daniel Richardson, Esq. Mr. Brooks was present and appeared *pro se*. The Washington County Clerk's was represented by Beverly Hill, and the Secretary of State's Office was represented by the Director of Elections, Will Senning and Lori Bjornlund. In light of the law, the record, and the arguments put forth at the hearing, the Court makes the following determinations.

Analysis

The right to vote is enshrined prominently in Article I of the Vermont Constitution and is a sacred component of our liberty as Vermont citizens. Nonetheless, many choose not to vote because they feel their votes do not matter in the midst of a vast sea of other cast ballots.  This election convincingly proves those persons wrong and reinforces the core principles of our democracy:  that each voter matters; that each vote counts; and that, sometimes, even one vote can make the difference in an election.

The Court is especially mindful that failing to count a vote cast could have the effect of disenfranchisement of that particular voter.  As a result, it has reviewed the contested ballots with great care.  The Court's true north in that review "is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, effect must be given to that intent … if the intent cannot be fairly and satisfactorily ascertained, the ballot cannot rightfully be counted." *In re Manchester Town Election*, 115 Vt. 230, 231 (1947).

In this instance, two ballots contained nearly identical markings, one in favor of Mr. Brooks and one in favor of Ms. Hill.  *See* Exhibit A & B.  The Court confirmed that the voter tabulation machine used during the recount did not count the vote for Mr. Brooks.  The ballot for Ms. Hill had not been run through the vote tabulation machine.  The two ballots should be counted in the same way.  As a result, the present vote total remains the same.  (Mr. Brooks:  3,709; Ms. Hill:  3,708).

The third ballot contains a filled-in oval for Mr. Brooks, but it has three diagonal lines through the oval, and it appears to have been initialed.  *See* Exhibit C.  The voter in question made no other diagonal marks for the other candidates

that he or she voted for on the ballot. Instead, the voter simply filled in the oval for the desired candidate. The voter may have made some initial marks and then decided to fill in the ovals for all of the candidates, including Mr. Brooks. Or, the voter may have been attempting to cancel the vote for Mr. Brooks. Indeed, upon close inspection by the Court, the Court believes the slash marks were added on top of the oval, which indicates a possible intent to strike the vote. Under such circumstances, the Court cannot discern determine with reasonable assurance whether the voter intended to vote for Mr. Brooks or not.

The Court has determined that the vote tabulation machine counted this ballot for Mr. Brooks. In light of the above ruling, however, it should not have been counted in his favor. One vote will be deducted from Mr. Brooks' total. (Mr. Brooks: 3,708; Ms. Hill: 3,708). As a result of that ruling, the Court need not address Ms. Hill's argument under 17 V.S.A. § 2587(d).

The fourth ballot contains a fully filled-in oval for Mr. Brooks along with an X over the oval. His name is also circled. While Ms. Hill argues that Mr. Brooks' name has been crossed out, the Court sees the markings as a circle. *See* Exhibit D. A review of other votes cast by this voter on the ballot show that he or she employed those similar markings for nearly all of the votes cast. In some instances, the voter also added a circle around the oval or the word, "Yes." The voter also made markings that could be a circle on Ms. Hill's name, but did not fill in her oval or make an X on her oval. The Court cannot conclude that the mark on Ms. Hill's name indicates any intention to cast a vote for her.

Ms. Hill has argued that the voter's intent may not be determined because he did not use consistent marks on his ballot. No doubt, the ballot is not a model of

3

consistency. But, that is not the issue. The question is whether the voter's intent can be determined with reasonable certainty. In the Court's view, the voter's almost fully consistent pattern of fully filling in the ovals, making X's over the ovals, and circling the candidates' names, allows the Court to ascertain the voter's intent with reasonable certainty. The Court is confident and believes the voter intended to cast a vote for Mr. Brooks.

Accordingly, as this ballot was not run through a tabulation machine, an additional vote will be added to Mr. Brooks' total. (Mr. Brooks: 3,709; Ms. Hill: 3,708).

## Conclusion and Judgement

As a result of the recount and this proceeding, the Court concludes that the winner of the election between Mr. Brooks and Ms. Hill is Mr. Brooks, by a vote of 3,709 to 3,708.

## Remedy

The Court is not empowered to give an advisory opinion. Nonetheless, given the time sensitive nature of these proceedings, the Court will set out its views as to the appropriate remedy should this decision be subject to appeal.

Pursuant to 17 V.S.A. § 2602k, when a recount results in a tie vote, a recessed election is to be scheduled within three weeks. On the other hand, 17 V.S.A. § 2369(b), which specifically addresses primary elections, indicates that a tie vote in a primary election for a party's nomination is to be decided by the party committee. In cases where the primary concerns a county office, the party committee for the county shall decide which candidate is to prevail. *Id*. § 2369(b)(3).

4

The question is which statutory provision controls in the event of a tie vote in a primary that follows a recount.

For a number of reasons, the Court believes Section 2369(b) provides the appropriate remedy. First, a specific statute will control over a more general one. *See Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90, 94. Section 2369(b) expressly addresses situations where a primary election has resulted in a tie vote. If a recount finds that a primary election has resulted in a tie, the provisions of Section 2369(b) are triggered.

Second, statutes addressing similar topics are to be interpreted consistently with one another. *See In re Preseault*, 130 Vt. 343, 346 (1972). In this instance, the Court does not believe the Legislature would have set forth a different remedy for primary elections that result in a tie in the first instance from primary elections that result in a tie following a recount.

Third, primaries are "party elections." Section 2369 reflects the view that the parties should have a strong say in determining who should be their standard bearers. *See, e.g., Cal. Democratic Party v. Jones*, 530 U.S. 567, 575–76 (2000) ("[O]ur cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party select[s] a standard bearer who best represents the party's ideologies and preferences." (internal quotation omitted)).

Fourth, the logistics of holding a recessed primary election favor adoption of the remedy in Section 2369(b). Even though all parties and the Court have been working diligently, meeting the notice and ballot printing deadlines for a recessed election and the general election would be very difficult. In addition, a second

primary election could also warrant another recount and, possibly, result in tie. In that event, the process would be even further delayed.[1]

Section 2369(b) sets out a quick and certain process that will determine the primary victors, allow him or her to begin campaigning, and not interfere with the schedule of the general election.

WHEREFORE, the Court concludes that any tie vote in the 2016 democratic primary election for Washington County Senate would be determined by the process set out in 17 V.S.A. § 2369(b).

Lastly, Ms. Hills' request, made at hearing, to invalidate the election results under *Putter v. Montpelier Pub. Sch. Sys.,* 166 Vt. 463, 467 (1997), is denied. Such a result in an extraordinary remedy that can only be justified if the Court detects extreme improprieties associated with the election. The Court has been presented with no such evidence in this case. A close election is nothing more than that. Invalidation of the results of this election is not warranted.

<u>Appreciation</u>

The Court would also be remiss if it did not acknowledge the incredible effort that has gone into completion of this recount. Clerk Elizabeth Battey, especially, and Mr. Senning and Ms. Bjornlund of the Vermont Secretary of State's Office, clerks and election staff from the cities and towns of Washington County, and volunteer members of the Recount Committee are due high praise for their

---

[1] Section 2369 was amended in 2010 to send all tie-votes in primaries to party committees. 2009, No. 73 (Adj. Sess.), § 5. Prior to that time, tie-votes in state senatorial races were resolved by run-off election. *Id.* Act No. 73 altered numerous dates on the election calendar and one may infer that the Legislature's alteration to Section 2369 recognized, at least in part, a need for a more swift, final resolution to primary elections.

conscientious work and contributions to the democratic process. In addition, the City of Montpelier and Clerk John Odum are due great thanks from the Court for making its vote tabulation machines available to the Court during this process. A grateful State and County salute to everyone who helped make this recount go as smoothly and quickly as possible.

Electronically signed on August 26, 2016 at 02:55 PM pursuant to V.R.E.F. 7(d).

Timothy B. Tomasi
Superior Court Judge